UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-54-GWU

DEBRA ANN RAMEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately

portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Debra Ann Ramey, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of mild degenerative disc disease of the lumbar spine, a history of chronic fatigue syndrome, fibromyalgia, and mental impairments "including an affective/mood disorder, personality disorder not otherwise specified, and substance addiction disorder." (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Ramey retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 22-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "medium" level exertion, and (1) could no more than frequently push or pull with the lower extremities; (2) could no more than frequently climb, stoop, crouch, kneel, or crawl; and (3) retained the mental capacity to understand, remember, carry out, and sustain simple, repetitive work tasks, adapt to routine changes in a work environment, and relate adequately to others including coworkers and supervisors. (Tr. 397). The VE responded that there were jobs that such a

person could perform, and proceed to give the numbers in which they existed in the regional and national economies. (Tr. 398-9).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Ramey alleged disability due to an inability to stand, sit, or walk for extended periods of time and an inability to withstand the stress of being at work and being around people. (Tr. 73). She stated at the administrative hearing that she had last worked in October, 2002 in her job doing the payroll for a family-owned firm, because she had chronic fatigue syndrome, fibromyalgia, a bipolar disorder, and stress from pain. (Tr. 378-9). She had seen several psychiatrists, including a Dr. Narola, who she did not think was helping, switched to another psychiatrist who retired, and was currently seeing Dr. Eric Moffet every six to eight weeks. (Tr. 384-5). He was treating her for bipolar disorder, with associated panic attacks in crowds of people, and chronic fatigue syndrome. (Tr. 385-6). She saw a counselor, Mable Lineberger, regularly. (Tr. 393). She did very little socializing outside of her home except for attending church. (Tr. 390). Medication had helped to control her racing thoughts but she had not yet been stabilized. (Tr. 385, 393).

The plaintiff focuses her objections on appeal to the ALJ's evaluation of the mental evidence. The court agrees.

Medical evidence in the transcript shows indications that the plaintiff was treated for psychological stress well before her alleged onset date, particularly by Dr. Jay Narola, whose provisional diagnosis in December, 1999 included a moderate major depressive disorder, with a current Global Assessment of Functioning (GAF) score of 50 to 55. (Tr. 143). He prescribed the medication Wellbutrin and later added Klonopin for anxiety, noting that she had previously been receiving it from her family doctor.[1] The plaintiff's treating family physician had diagnosed anxiety and depression for some time, prescribed medications, and, in May, 2003, referred her to Dr. Moffet because "Dr. Thompson" was retiring. (Tr. 328).[2] Dr. Moffet's initial office note of October 19, 2003 included a description of the plaintiff's mood swings from depression to feeling "hyper," and indicated that her present medications included Topamax, which had been helpful, as well as Klonopin, Wellbutrin, and Vistaril. (Tr. 360). Dr. Moffet diagnosed a bipolar disorder, with a GAF score of 45. (Tr. 361). This GAF score reflects serious symptoms, per the DSM-IV-TR. Dr. Moffet ordered an increase in the dosage of Wellbutrin because the current dose was not sufficient to address depression, noted that it was probable that further increases would be necessary, and ordered a

---

[1]A GAF score of 51 to 60 reflects moderate symptoms, while a GAF score of 50 or below represents serious symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.

[2]There are no office notes from Dr. Thompson in the transcript.

decrease in Klonopin because it could cause sedation. (Id.). On October 6, 2003, the plaintiff arrived at the office of Mable Lineberger "distressed and crying," and described severe anxiety, obsessive ideations, hair loss, and depression, noting that her dosage of Topamax was being decreased and Wellbutrin was being increased. (Tr. 364). Lineberger stated that she was "really crying," and recommended that she continue to see the psychiatrist. Dr. Moffet commented that it would take time for medication changes to be effective (Id.), and in January, 2004, although the plaintiff stated that Topamax was helping her racing thoughts, she stated that she was still having mood swings. (Tr. 163). Dr. Moffet prescribed another medication, Lamictal, but the plaintiff reported in March that it was not helpful and gave her a rash. (Tr. 362). She was feeling more stress and depression. (Id.).

The ALJ apparently did not find Dr. Moffet's diagnosis of a bipolar disorder to be persuasive, since it was not listed as being a "severe" impairment. The ALJ focused to a considerable extent on office notes from Mable Lineberger which date back to December, 2002.[3] Lineberger's notes contained references to prescriptions for Topamax and Wellbutrin, and in March, 2003, the plaintiff stated that she had a 60 percent improvement in her mood, although she continued to have significant problems. (Tr. 307). Her self-reported severity of symptoms was consistently

---

[3]The relationship of Lineberger to Moffet is not entirely clear. The bulk of Lineberger's office notes are in a self-contained portion of the transcript, although the most recent note, previously cited, from October, 2003 is contained in Dr. Moffet's office notes.

"moderate or more," according to Lineberger, at one point reporting four days of significant depression without any known stimuli. (Tr. 306).

Lineberger, a licensed psychologist, also diagnosed a "severe" bipolar disorder at the time of the plaintiff's first recorded visit in December, 2002, along with a dependent personality disorder. (Tr. 331). The ALJ, with no real explanation, adopted the diagnoses of a one-time consultative psychiatrist, Wayne Ross Edwards, who interviewed Mrs. Ramey on January 15, 2003. His diagnoses were alcohol abuse, a mood disorder, and a personality disorder, with a GAF of 60 to 65. (Tr. 260). A GAF in this range reflects only mild symptoms. DSM-IV-TR, supra. Dr. Edwards did not have the benefit of review of pervious records. His diagnosis of alcohol abuse, which was adopted in modified form by the ALJ as substance abuse, is puzzling. The plaintiff denied the use of any illicit drugs or prescription drug abuse, and stated that she used alcohol "occasionally, approximately four times per month." (Tr. 257). The DSM-IV-TR states, in part, that: "The essential feature of Substance Abuse is a maladaptive pattern of substance use manifested by recurrent and significant adverse consequences related to the repeated use of substances. In order for an Abuse criterion to be met, the substance-related problem must have occurred repeatedly during the same 12-month period or been persistent. There may be repeated failure to fulfill major role obligations, repeated use in situations in which it is physically hazardous, multiple legal problems, and recurrent social and interpersonal problems." DSM-IV-TR, p. 198. There does not

appear to be any evidence in Dr. Edwards's report or elsewhere in the transcript to support such findings. Although the ALJ cited a statement by Mrs. Ramey to Dr. Sujata Gutti that she used alcohol about twice a week (Tr. 268) in the context of questioning her general credibility (Tr. 21), the reliability of the Edwards diagnosis was not questioned. In view of the lack of evidence supporting this diagnosis and the significant amount of evidence from treating sources of a bipolar disorder which may have been significantly limiting (and would also explain periods in which the plaintiff reported remarkable transient improvement in her symptomology), a remand will be required in order to further evaluate the plaintiff's mental limitations.

The decision will be remanded for further consideration.

This the 23rd day of January, 2008.

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**